By the Court. Bosworth, J.
McBryde having conveyed property to Mills, in satisfaction of the debt for $966, it cannot be seized by execution, at the suit of a creditor of McBryde, on the mere ground that such debt was infected with usury.—2 Hill, *163 522, Dix v. Van Wyck, and cases there cited; Sands v. Church, 2 Seld. 347.
The borrower having paid the debt with usurious interest, only the usurious excess can be recovered back.
That maybe recovered by the borrower, or his personal representatives, within one year after such payment. If no such suit be brought within the year, the sum may be sued for and recovered within three years thereafter, by any overseer of the poor of the town, or any county superintendant of the poor of the county, in which the payment may have been made.—1 R. S. 772, §§ 3 & 4.
McBryde testified, that Francis Ball was his partner, and was not informed of the sale and assignment, and. continued under the impression that the business was going on for his benefit.
This was very material evidence upon the question of the intent of the parties to that transaction. Although the evidence was given on his cross-examination, that fact did not estop the plaintiff from proving, that Ball had no interest in the business, and knew of the sale at the time, and subsequently labored under an employment by Mills.
If that evidence was not responsive to questions put to him on his cross-examination, but was volunteered, I have no doubt it would have been error to exclude testimony showing it to be untrue. The evidence related to matters which were not collateral, but were pertinent to the issue. In respect to such matters, to exclude evidence that a witness has made statements in conflict with his testimony given at the trial, is an error, for which a new trial will be granted. His evidence may be contradicted by showing the facts to be different from what he testifies them to be.—Patchin v. The Astor Mutual Insurance Company, 3 Kern. 268.
The serious difficulties which the case presents, arise out of exceptions to the parts of the charge, relating to the sufficiency of the consideration, and the extent of the authority conferred on Terhune, by the power of attorney from Mills.
It is quite clear that the power did not authorize Terhune, to establish and prosecute the business of a merchant tailor, in the name, and at the risk of Mills, nor to purchase a subsisting establishment with a view to the continuance of the business.
*164 The purchase, in question, was one of that character, and immediately after it was made, Terhune commenced the prosecution of it as it had been previously conducted, and continued to so prosecute it, until it was broken Up by the Sheriff, except that he controlled it himself, and acted throughout in the name of Mills.
The property was purchased at the agreed price of $4123 For $j3157tV%- of this price, he gave negotiable notes in the name of Mills, without any authority for so doing, except such as the terms of the power of attorney confer.
If the notes are not obligatory upon Mills, then McBryde did not receive anything for the property, except a discharge from a debt amounting to $966.
The responsibility of Terhune does not appear to be such, that a sale to him, on credit, for Ms notes, of the same amounts and maturing at the same time would be upheld.
The better opinion would seem to be, that as a general rule, an agent, employed to make purchases for Ms principal, has no authority to bind him, by a negotiable promissory note, or bill of exchange, even though authorized to buy on credit.
On such contracts, the principal would be liable, to the vendors only: In an action by them, or their assignee of such a contract, the consideration would be open to inquiry; all the circumstances attending the sale might be shown; and all payments and offsets adjusted and enforced. Proof of all these matters would be excluded, in an action by a bona fide endorsee of a negotiable note, or acceptance.
The assumption and exercise of such a power is not necessary to enable Terhune to execute fully, the express powers conferred by the instrument which appointed Mm an agent.
Taber v. Cannon et al., 8 Met. 456-458. Webber v. Williams College, 23d Pick. 302. Rossiter v. Rossiter, 8 Wend, 494. Paige v. Stone, 10 Metc. 160 and 167-8-9. Parsons’ Mercantile Law, p. 142 and (n. 2.)
As to the power of an agent to bind Ms principal by a purchase made on credit, see Boston Iron Co. v. Hale, 8 N. H. 363.
We do not intend to intimate, that when the agency by its terms relates to a business, which, in order to conduct it, as it is *165 common to conduct such a business, requires authority to bind the principal by negotiable paper, an agent may not so bind the principal, even though the letter of attorney does not, in express terms, confer such a power.
But it is unnecessary to pass upon that question, because it is not before us. No such ground can be taken in this case.
It cannot be gathered from the power of attorney itself, or be seen from the light shed upon it by any cotemporaneous facts which have been proved, that the principal intended to do more than authorize the attorney to make purchases with the money intrusted to him, and to sell any property he might so purchase.
If Mills, when he left for Europe, was a large owner of real estate, he would probably be surprised, on his return, to learn that Terhune had sold and conveyed it, by virtue of this power of attorney.
Mills has not ratified this transaction. As the evidence stands, the only conclusion admissible is, that he had not even heard of it at the time of the trial.
We think there was no evidence of a consideration, under the peculiar facts and circumstances of this transaction, sufficient to uphold the sale, so far as its validity, and the good faith of the transaction depend on that fact alone.
The case is one, the leading features of which present strong badges of fraud. Terhune had no means with which to pay the notes, nor the power, as agent of Mills, to procure them. At the time of the trial, he had not advised Mills of the transaction. Three of the notes had then matured. Mills was not liable as maker of them, without having ratified and adopted the transaction, and that he had not been asked to do. Terhune had not sufficient pecuniary ability to enable him to pay the notes himself.
The facts tend very strongly to the conclusion, that the object was to obtain payment of the $966, and make a speculation, by vesting the title in Mills, and coercing a compromise with McBryde’s creditors, upon such terms, that profit, as well as the payment of the $966, might be secured.
Selling the goods, on a credit of three, six, nine, and twelve months, even if the notes were valid, was necessarily delaying the creditors of McBryde, until the maturity of the notes, unless *166 the assignee should convert the notes into money by selling them. An assignment, with authority to sell on such terms of credit, would be void.
A sale upon such terms by an embarrassed debtor, with an understanding at the time, that the debtor should immediately assign the notes, rather than the goods sold, for the benefit of creditors, and that the purchaser should be the assignee, and a cotemporaneous execution of that understanding, would present a case falling within the mischief of the rule.
The assignment was not made to the nominal purchaser, it is true, but it was made to all that was visible of him, viz. his assumed agent in the purchase, and subsequent possession and disposition of the property bought.
The jury were charged, that “ if the sale and assignment were, in the intent and purpose of Terhune and McBryde, a single transaction, if the purpose was to keep the control and use of the goods while the four notes were maturing, and to postpone or interfere with the power of creditors, to coerce the conversion and application, to the payment of their debts, of the property for which the notes were given, then the sale was made with intent to hinder, delay, and defraud creditors, and was void, and entitles the defendant to your verdict.”
We cannot avoid thinking that, under this part of the charge, the jury would have found a verdict for the defendant, had they not been erroneously instructed in relation to the consideration paid for the goods, and the validity of the notes given by Terhune in the name of Mills.
The judgment appealed from must be reversed, and a new trial granted, with costs to abide the event.