THOMAS J. STEWART, Appellant, *v.* JAMES M. DRAKE, and ALBERT A. DRAKE, Respondents.

Defendants, stockbrokers in the city of New York, purchased for plaintiff certain stocks, under an agreement that they were to advance the money for the purchases, and he to keep with them a margin or security satisfactory to them. A portion of the stock was sold by defendants without giving plaintiff notice of the time and place of sale. Plaintiff repudiated and disavowed the sale. Defendants acceded to such disavowal and notified plaintiff, they would not consider the sale as made on his account, but on their own ; and by both parties it was subsequently treated as a nullity as between them. After that, defendants notified plaintiff to furnish additional margin ; and upon his failure so to do, and in the afternoon of the twenty-eighth April, served upon him personally, a notice, that unless a satisfactory margin was furnished, or the balance of his account paid, his stocks would be sold at public auction, upon the

thirtieth April, at 12.30 P. M., at a place designated; and the stocks were sold in accordance with the notice.

*Held,* that plaintiff had waived his right to recover as for a conversion of the stocks sold at the first sale. That his default in furnishing a satisfactory margin, or paying the balance of the account, entitled the defendants to enforce their lien by the sale of the stock; and that the parties living in the same city, the notice of sale was a timely and reasonable one, and the sale legal.

*Held* further, that in an action brought to recover damages, for the alleged unauthorized sale of the stock, the answer setting up a counterclaim, it was proper for the referee to state an account between the parties, and to give judgment in favor of defendants for any balance found due them.

(Argued November 14th, 1871; decided November 21st, 1871.)

APPEAL from judgment of General Term, first department, affirming a judgment entered upon the report of a referee.

Action to recover the damages sustained by the plaintiff, for the alleged unauthorized sale of certain shares of stock, and the loss of profits and gains, which the plaintiff would have made upon the same, and the dividends accruing thereon, and for an account of stocks purchased by the defendants for the plaintiff. The defendants were stock brokers in the city of New York, and had from August, 1863, to April, 1864, bought and sold stocks upon the retainer and employment, and for account of the plaintiff to a large amount, the defendants advancing the money for the purchases, and the plaintiff securing them against loss, by reason of a decline in the market, by furnishing them security or depositing with them, moneys to a small per centage of the par value of the stocks. No complaint is made of the transactions and dealings by the defendants, in behalf of the plaintiff, prior to April 19th, 1864. Prior to, and on that day, the defendants had purchased for, and held on account of the plaintiff, two hundred shares of the Ashburton Coal Company stock, one hundred shares of the common stock of the Chicago and Northwestern Railroad Company, and three hundred shares of the guaranteed stock of the Michigan Southern and Northern Indiana Railroad Company. The referee has found, that on the evening of the day preceding, the defendants were in advance for the plain-

tiff on the purchase of the stock, over and above all margin, $48,949.79, and the value of the stock was but $45,650, leaving a deficiency of $3,299.79, and stocks had been, and were rapidly declining in the market, and the plaintiff had been notified before the 18th of April, that the defendants required more margin. On the morning of the 18th of April, the plaintiff left his house in New York and went to Philadelphia, and was absent some ten days, and on the 18th of April the defendants by written notice left at plaintiff's house, demanded more margin. On the 19th of April, the defendants without notice to the plaintiff of the time and place of the sale, sold at the brokers' second board in the city of New York, 100 shares of the guaranteed stock of the Michigan Southern and Northern Indiana Railroad Company, and 100 shares of the Chicago and Northwestern Railroad Company for less than the cost price thereof, and immediately gave notice to the plaintiff of such sale by leaving the same at his house. The plaintiff, on his return from Philadelphia, notified the defendants, that he repudiated and disavowed the sale, and the defendants acceded to such disavowal, and notified the plaintiff they would not consider the sale as having been made on his account. Between the 19th and 30th of April, the defendants on several occasions notified the plaintiff, that unless he furnished more margin they would sell his stock, and on the afternoon of the 28th of April personally served on the plaintiff, a notice that his stocks would be sold at public auction upon the 30th April, at 12.30 P. M., at a place specified in the notice, unless prior to that time, he furnished a satisfactory margin or paid the account, and at the time and place mentioned certain of the stocks were sold by auction, to wit, 300 shares of the guaranteed stock of the Michigan Southern and Northern Indiana Railroad Company, 100 shares of the Chicago and Northwestern Railroad Company, and 100 shares of the stock of the Ashburton Coal Company, and the proceeds credited to the plaintiff. The referee stated an account between the parties, and found a balance due the defendants of $3,235.97, and for that sum with costs the defendants had judgment,

which was affirmed by the Supreme Court at General Term sitting in the first department, and the plaintiff has appealed to this court.

*S. Hand,* for appellant. The sale of the 19th April was a conversion. (*Markham* v. *Jaudon,* 41 N. Y., 235.) It was of plaintiff's stock. (*Livermore* v. *Northrup,* 44 N. Y., 107.) By this sale the rights of the parties were fixed. (1 Seld., 544; 5 Hill, 76.)

*E. S. Van Winkle,* for respondents. The referee's findings of fact conclusive. (*Van Steenburgh* v. *Hoffman,* 15 Barb., 28; *Woodin* v. *Foster,* 16 Barb., 146; *Sinclair* v. *Talmadge,* 35 Barb., 602; *Colwell* v. *Lawrence,* 24 How., 324; *Davis* v. *Allen,* 3 N. Y., 168; *Miller* v. *Lockwood,* 32 N. Y., 293; *Wilson* v. *Wilson,* 4 Keyes, 421; *McCabe* v. *Brayton,* 38 N. Y., 196.) No particular shares of stock were marked as plaintiff's property, and all that was required of defendants, was to keep a like number of shares ready for delivery. (*Nourse* v. *Prince,* 4 John. Ch., 490; 7 John. Ch., 69; *Horton* v. *Morgan,* 19 N. Y., 170.) The relation of property, if in bar, entitles plaintiff to only nominal damages. (*Wheelock* v. *Wilson,* 5 Mass., 114; *Halett* v. *Novion,* 14 John., 273; Seely on Dam., 2d ed., 492.)

ALLEN, J. No question is made upon this appeal, as to the regularity of the sale by the defendants on the 19th of April, 1864, of the 200 shares of stock, or the effect of such sale as a foreclosure of the plaintiff and a bar to his legal rights. The principal question considered in *Markham* v. *Jaudon* (41 N. Y., 235) is not, therefore, involved in this action. Both parties assented to regard that sale as a nullity, and neither claimed to have acquired any rights under the same. If the decision in *Markham* v. *Jaudon* (41 N. Y., 235) is sound, the plaintiff might have treated the sale as a conversion of so much of his stock, and brought an action therefor, and recovered the value of the stock sold. But he did not elect so to

do.   On the contrary, in his letter to the defendants of 27th of April, the day after his return home, and purporting to have been written immediately on learning of the sale, he disavows and repudiates the alleged sale, and notifies the defendants, that he shall require them to account for all the stocks belonging to him, and left with them, particularly specifying the stocks he claimed still to own, and the same held by the defendants for him, on the morning of and before the sale of the 19th of April.   He did not claim as for a conversion of any part of the stocks, but did insist that the defendants should account for all, as if no sale had been made of any part, and as still held by them for him.   The defendants at once acquiesced in and assented to the claim of the plaintiff, and agreed to regard the sale as made on their own account, and not as a sale of the plaintiff's stock.   Yielding to the claim of the plaintiff, they admitted that they still held his stock, and every part of it, subject to the agreement under which it was bought.

Under this arrangement the duty of defendants was fully performed, if they had at all times stock on hand, to meet the demand of the plaintiff when called upon, or when required by the exigencies of the dealings between the parties.   The stock purchased for the plaintiff had no ear mark, and one share being of equal value with every other share of the same stock, the defendants were not bound to deliver, or to have on hand for delivery, any particular shares, or the identical shares purchased for the plaintiff.   (*Nourse* v. *Prime*, 4 J. C. R., 490, aff'd 7 id., 69; *Horton* v. *Morgan*, 19 N. Y., 170.)

The plaintiff, on the 27th of April, claimed and insisted that the defendants still held and must account for his stock, and the defendants assented to occupy that position.

The plaintiff, when called upon after that time, to make further advances and furnish a margin, in pursuance of the agreement under which the stock was bought, made no suggestion that any part of the stock had been sold, or any claim to be relieved from making further payments by reason of

such sale. He assumed that the rights of the parties in the situation of his stock, and his liabilities in respect thereto, remained unchanged and unaffected by the sale of the 19th of April. It follows that on the 28th April, the plaintiff was possessed of all his stocks and rights in the stocks purchased by the defendants for him, as if no sale had been attempted, and could have demanded and received them upon payment of the amount due the defendants. As late as the 2d of May, the plaintiff, in a communication addressed to the defendants, claimed that they had still on hand the stocks which had been bought for him before the 19th of April, and had not been sold before that day, again enumerating the stocks he claimed to own. It is quite too late, therefore, for the plaintiff now to fall back upon that sale, and claim to recover as for a conversion of the stock then sold, as the sale was repudiated by him, waived by the defendants, and by both treated as a nullity, so far as the plaintiff and his stocks were concerned.

The question as to the effect upon the right of action, of a restoration of the property to the owner, after a conversion of the same, is not involved. Both parties have agreed, and acted upon the assumption that there was no sale, and consequently no conversion of the plaintiff's stocks, on the 19th of April.

There is no pretence upon the evidence that the defendants, at any time after the sale of the 19th of April, purchased stocks to supply the place of those sold on that day. They simply treated that sale as of their own stock, made on their own account, and continued to hold the plaintiff's stocks until the sale of the 30th of April; and during all that time the rights of the parties, by mutual consent, were the same as if no stocks had been sold on the 19th, and had the plaintiff complied with the calls repeatedly made upon him, to increase his margin by making a deposit, made necessary by the decline of the shares in the market, the defendants could not have sold the same as they did; or, had the plaintiff elected to pay for the stocks at the prices for which they had been purchased, he could have demanded, and would have been

entitled to receive, the same from the defendants. The corresponding right was with the defendants, to enforce their lien by a sale of the stock, upon the failure of the plaintiff to comply with the agreement on his part, and his default in making a proper deposit or furnishing satisfactory security.

The referee has found, upon evidence warranting his conclusions, that after notifying the plaintiff several times between the nineteenth and thirtieth of April, that unless he furnished more margin they would sell his stocks, the defendants did, on the twenty-eighth of April, notify the plaintiff personally, and in writing, that unless a satisfactory margin was placed in their hands, or the balance of the account paid, they should sell the stocks held on his account, designating and describing them, at public auction, on Saturday, the thirtieth of April, at an hour and place named in the notice. The plaintiff failed to make the payments or improve his margin, and certain of the stocks were sold pursuant to the notice, and the proceeds credited to the plaintiff. At the time of the sale the value of the stocks, together with the margin or deposit of the plaintiff with the defendants, was considerably less than the cost price of the stocks on hand, and the advances made by the defendants in the purchase; and this, under the agreement as found by the referee, that the plaintiff was at all times to keep with the defendants a margin, or security, entirely satisfactory, authorized the sale of the stock by the defendants, and such sale was clearly regular and legal. A notice given on the afternoon of Thursday, of a sale to be made at half-past twelve o'clock on Saturday, was a timely and reasonable notice, the parties living and being in the city of New York where the sale was made, and all the transactions had.

The giving of any notice of that sale was denied by the plaintiff; and the evidence in relation to it was conflicting. But there was evidence, which, if believed, proved the fact as alleged by the defendants; and the finding of the referee in accordance with that evidence, is conclusive in this court. The referee, upon a statement of the accounts between the

parties, found a balance due to the defendants, for which judgment was given. This was proper. The judgment for the defendants was based upon the terms of the agreement between the parties as found by the referee, and a failure of the plaintiff to furnish a margin or security for the advances made by the defendants, pursuant to that agreement, and the right of the defendants, resulting from the default of the plaintiff, to sell the stock, upon reasonable notice to the plaintiff in person, of the time and place of sale.

The questions made as to the admissibility of evidence, are wholly immaterial in view of the facts found by the referee, as the testimony objected to and admitted under objection, even if technically inadmissible, could not have affected the result.

There is no error in the record, and the judgment must be affirmed with costs.

All concur.

Judgment affirmed.