JACOBY et al. v. S. JACOBY & CO.

(Circuit Court, S. D. New York. July 3, 1900.)

1. CONTRACT FOR PAYMENT OF MONEY—MATURITY—DEMAND.

In connection with an agreement by which the complainants were to manufacture cigars and furnish the material therefor to the defendant for three years, the accounts to be settled monthly, the complainants loaned to the defendant about $10,000 to take up its discounted notes. As security for this loan, defendant sold and transferred to complainants all of its fixtures, labels, brands, trade-marks, and merchandise in the cigar business. It was agreed that, as complainants used the defendant's labels for the manufactured cigars, they should pay or credit the defendant therefor, and the amount should be applied towards the payment of the loan. No time was declared for the maturity of the loan. About 2½ years after the loan, plaintiffs made demand for the balance due thereon, and, payment not being made, they sold the collateral at public auction. *Held*, that the loan was not made for 3 years, but was payable on demand; nor were the labels to be the entire reliance of plaintiffs for payment during the life of the contract, so that the right to ultimate payment was postponed until its termination.

2. PLEDGES—SALE—NOTICE.

Written notice that the property pledged by defendant would be sold by plaintiffs at half past 12 o'clock the next day was deposited in the mail box of the president of the defendant company about the close of business hours the day before the sale, but not received by him until 10 o'clock the next day, and advertisement of the sale was made in an evening newspaper of the same day, and in a morning paper of the day of the sale. *Held*, that the notice was insufficient to give title to the purchaser at the sale, since it gave defendant no opportunity to redeem the property, or save its equity.

Clarence J. Shearn, for complainants.
Morris S. Wise, for defendant.

SHIPMAN, Circuit Judge. The complainants, Morris Jacoby and Charles Jacoby, citizens of the state and city of New York, and partners by the name of Morris Jacoby & Co., are manufacturers of cigars. The defendant, S. Jacoby & Co., is a corporation of the state of West Virginia, and is in the business of selling cigars in the city of New York. Gustave T. Jacoby was its president, and his wife and nephew owned all the stock except two shares. On January 28, 1896, the defendant, through Gustave Jacoby, its president, entered into a written contract with the complainants, by which the latter agreed to manufacture cigars for the defendant for the term of three years, and the defendant agreed to buy its cigars exclusively of the complainants, and, if its net profits should amount to 10 per cent. on the amount of goods which it sold, the contract was to continue for the further term of three years from January 28, 1899. Monthly merchandise accounts were to be made, and settled by cash payments, notes, or bills receivable. The complainants agreed to loan and did loan the defendant money to take up six notes, amounting in all to $10,022.70, and the defendant sold and transferred to them all fixtures, labels, brands, trade-marks, signs, and merchandise of every kind as collateral security for the payment of this loan. It was agreed that, as the complainants used the defendant's labels for the manufactured cigars, they should pay or credit the defendant

therefor, and the moneys so paid or credited should be applied to the payment of the loan. At the end of the term the defendant was to pay to the complainants all sums of money which it should owe them. On January 6, 1898, a supplemental agreement was entered into by the parties, whereby all the property pledged by the preceding agreement as collateral security should be also collateral security for all debts due or to become due by the defendant to the complainants, and, if this indebtedness should, at the end of the year 1898, be reduced $2,500 or more, then the two agreements were to be continued to January 1, 1900. After January 28, 1896, Charles Jacoby became, in accordance with the agreement, a director, secretary, and treasurer of the defendant, to serve without salary; and one Simpson, who was connected with the complainants' business, became a director. On August 17, 1898, the loan account had been reduced by money paid for labels and by credits for labels to $5,178.77, and on that day the complainants made a written demand for payment, to which no reply was returned. The defendant's whole indebtedness had increased after January, 1896, and its solvency at this time depended upon the collectible character of certain of its bills receivable. On the afternoon of August 29, 1898, the sale at auction of the trade-marks, brands, and labels pledged as security for the loan account on the following day at half past 12 o'clock was advertised in the Mail and Express, and was also advertised in the Journal of Commerce on the morning of August 30th. Written notice of this sale was put into the mail box of the president of the defendant at his business office about 4 o'clock in the afternoon of August 29th, and was received by him about 10 o'clock on the following morning. The sale took place, the trade-marks, brands, and labels were bid in for $200 by one Hopkins, a newspaper employé, who was not present, who was a mere conduit in the transaction, and transferred his title to the property so purchased to the complainants. Among these trade-marks were the "Metropolitan," "Puck," and "La Flor de Nectar," which the complainants began immediately to use, and still use, as trade-marks for cigars manufactured and sold by them; but the defendant also still continues to use them in its own business. The complainants think that they are worth over $10,000. The bill was brought to restrain the defendant from the use of these trade-marks, and from the use or sale of any labels or other materials or articles relating thereto.

The question in the case is whether the complainants obtained any title to the trade-marks by virtue of the auction sale of August 30, 1898. The first point made by the defendant is that on the day of sale the loan account was not due. It is agreed that the sale of the collateral was made upon that account alone, and the supplementary agreement is, therefore, not of material importance. It is manifest that the contract does not specify when the loan, as a whole, is to become due, and it is also true that in such case the time of payment for money loaned is upon demand; but it is claimed that the contract shows that the parties intended that the loan account should be a running account for three years, payable in part or in whole, from time to time, by the labels, as they were continuously used by the complainants in the manufacture of cigars for the defendant, and that any residue was to be payable at the termination of the contract. When

Gustave Jacoby approached Morris Jacoby & Co. on the subject of the contract of 1896, the defendant manifestly needed pecuniary help, and a new manufacturer of its cigars. The contract was carefully drawn except in regard to the maturity of the loan, and the intent of the parties is to be gathered from the object of the contract, and its terms in other respects. It was an agreement by which the complainants were to manufacture and furnish material to the defendant for three years, for which accounts were to be rendered and settled monthly; and they were also to loan it about $10,000 to take discounted notes; and, as the defendant was to furnish and sell to them labels for use upon the cigar boxes, they were to apply the amount of the money due for the labels upon the loan account. All the debts due to the complainants for loans or for merchandise were to be paid at the end or sooner termination of the three-years contract. Meanwhile one of the complainants was to have constant watch, charge, and control of the defendant's finances, and all its book accounts and bills receivable were to be turned over to them as security for the payment of all the debts owing them by the defendant. Care was taken that the complainants should have everything which the defendant could give by way of security. Both the circumstances and the contract show that S. Jacoby & Co. could not have been in good credit, and that the complainants were entering into business relations which required watchfulness. They were to loan over $10,000 to take up notes which had been discounted, and they were to credit, in whole or in part, upon this debt, the value of the labels as they used them; but I see no adequate reason to suppose that a credit was given for three years, or that the labels were to be their entire reliance for payment during the life of the contract, and that the ultimate payment was to be postponed until its termination. It would require more clearness of statement than exists in the contract for the conclusion that a loan of money, which, as a rule, is, in the absence of agreement, payable on demand, was turned into a loan which could not mature until the expiration of three years.

The next and important point which the defendant urges is that the sale was void on account of the inadequate personal notice which was given of it to the defendant. When the contract is silent in regard to the mode of procedure in the event of a public sale of the pledged property by the pledgee, the rule is that "the pledgee must make demand for the payment of the loan, and, in default of payment, give a reasonable personal notice to the pledgor of the intention to make such sale, specifying its time and place." Stewart v. Drake, 46 N. Y. 449; Markham v. Jaudon, 41 N. Y. 235. The necessity of a reasonable notice, and of fairness on the part of the pledgee, is insisted upon because the pledgee has a right to redeem the property if he can, and because he should have an opportunity to enable the property to bring its fair value. The notice is not a mere formal and technical proceeding, but is for the purpose of giving actual notice to the pledgor, to enable him to save his property. 2 Kent, Comm. 582; Stearns v. Marsh, 4 Denio, 227; Wheeler v. Newbould, 16 N. Y. 392; Bryan v. Baldwin, 52 N. Y. 232. The courts have established no specific rule in regard to the amount of time which shall be considered reasonable. In Willoughby v. Comstock, 3 Hill, 389, two days' notice

was considered sufficient. In Stewart v. Drake, supra, a notice on the afternoon of Thursday to sell stocks, which the broker and pledgee had bought in "upon a margin," at half past 12 on the Saturday following was held, as between the parties living in the same city, to be a reasonable notice. This was a notice of about two days. The notice in the case at bar was put into the mail box of the president of the defendant at his business office at about 4 o'clock in the afternoon of August 29th—about the close of business hours—to sell at half past 12 o'clock on the next day, which was half of the time held to be reasonable in the Stewart Case. It was received the next morning about 10 o'clock. At the sale, the auctioneer, one of the lawyers of the complainants, and the lawyer of the defendant, and Gustave Jacoby only were present. At the time of said sale, the defendant, by written protest, publicly read, protested against the sale upon divers grounds; one being the unreasonable notice which had been given of the date. The defendant's dissatisfaction and reasons for it were fully stated. Willoughby v. Comstock, supra. If a notice is to be of value or possible benefit to the party notified, the notice in this case was unreasonable. It gave the defendant no opportunity to redeem or save its equity in the property. The bill is dismissed, with costs.