ANGELINA G. WICKS, Appellant, *v.* WALTER T. HATCH et al., Respondents.

Plaintiff executed to G. A. W. a power of attorney empowering him to buy and sell gold, stocks and bonds; and to execute for her, and in her name, " all orders, checks or other instruments, in writing, whatsoever " which might, in his discretion, be necessary in the business, with power of substitution, etc. G. A. W. employed defendants, as brokers, depositing a sum as a margin. He gave to them a writing, signed by him as attorney for plaintiff, authorizing them to sell, in their discretion, at public or private sale, without notice, the stocks, etc., which they might be carrying for her whenever the margin should fall below five per cent. In an action to recover damages for sales made at the board of brokers, in pursuance of this authority, defendants set up as a counter-claim a deficiency arising on the sales after exhausting the margin. *Held,* that it was within the authority of G. A. W. to execute the writing, and defendants were authorized to sell at the board of brokers without notice, when, in good faith and in the exercise of a sound discretion, they deemed the state of the market justified it; that plaintiff was liable for any loss on sales beyond the amount of the margin; and that the same was proper as a counter-claim.

The *court charged, among other things,* that defendants had a right to sell when the market rendered it prudent, either for the benefit or protection of their principal or for their own protection. *Held,* no error; that from their peculiar relations, as brokers holding stock paid for mainly out of their own funds, defendants were authorized to, and necessarily in making sales acted for, the protection of their own interest as well as that of their principal.

(Argued June 23, 1875; decided September 21, 1875.)

APPEAL from judgment of the General Term of the Superior Court for the city of New York, in favor of defend-

ants, entered upon an order denying a motion for a new trial and directing judgment upon a verdict. (Reported below, 6 J. & S., 95.)

This action was brought to recover damages for an alleged unlawful sale by defendants, as brokers, of stocks and government bonds belonging to plaintiff. Defendants set up in their answer, as a counter-claim, a deficiency arising on the sales over the amount deposited with them by plaintiff, for which deficiency they claimed judgment.

The defendants were bankers and stock-brokers in the city of New York, and the plaintiff opened an account with them on the 2d day of April, 1869, by depositing with them, at interest, $2,000 in cash, and the proceeds of $50,000 in United States bonds, which she authorized them to sell and pass to her credit. During April and May she made various transactions through them in the purchase and sale of stocks, bonds and gold coin, the details of the business being all managed by her husband, George A. Wicks. This account was closed by defendants giving to Mr. Wicks a check to order of plaintiff for about $45,000, on the twenty-sixth of May. On the 12th of June, 1869, Mr. Wicks, who had been intrusted with his wife's checks in blank, reopened the account by depositing $60,000 to her credit with defendants. The plaintiff and her husband resided at Fort Washington, near New York. On the 31st July, 1869, she acknowledged the following power of attorney to her husband, which was lodged with the defendants:

" I, Angelina G. Wicks, wife of George A. Wicks, of the city, county and State of New York, have made, constituted and appointed, and by these presents do make, constitute and appoint my said husband, George A. Wicks, my true and lawful attorney, for me, and in my name, place and stead, and for my account and risk, to buy, sell, assign and transfer, in his discretion, gold, stocks and bonds; and to draw, execute, sign and deliver, for me and in my name, all orders, checks, or other instruments in writing, whatsoever, which shall or may, in his discretion, be necessary in the conducting,

carrying on and transacting the business of buying and selling gold, stocks and bonds, on speculation or otherwise; giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do, or cause to be done, by virtue hereof," etc.

On the eighteenth September, George A. Wicks gave defendants the following paper:

"NEW YORK, *September* 18, 1868.

I hereby authorize Messrs. W. T. Hatch & Son to sell, in their discretion, at public or private sale, and without notice to me or any notice whatever, the stocks, bonds or gold which they are or hereafter may be carrying for me, whenever my margin shall fall below five per cent.

(Signed)    GEORGE A. WICKS,
                        for A. G. WICKS, Attorney."

The accounts were generally rendered monthly. The account of September 1, 1869, showed that the plaintiff was indebted to the defendants for the cost of stocks, bonds and gold bought for her to the amount of $332,864.73, against which they held for their security the stocks, bonds and gold so purchased.

The action was brought for the alleged wrongful sale, without notice, of 100,000 United States 5–20 bonds, 500 shares of Philadelpia and Reading Railroad stock, 600 shares of New York Central, 100 shares of Toledo, Wabash and Western, 100 shares of N. W. Com., 200 shares of Hudson River, all sold on the 28th September, 1869, and for the sale on the 22d October, 1869, of 300 shares of Toledo, Wabash and Western. On proof of these sales, and of higher prices attained by the several securities at a later period, plaintiff claimed to recover $48,725.87.

At the time of the sales on the twenty-eighth September, the stocks had rapidly fallen, and the margin left was less than two per cent; the accounts after the sale in October showed a balance against plaintiff of $1,521.65.

The court charged, among other things, that the writing of the eighteenth September gave the same power and discretion to the defendants that Mr. Wicks himself had; that this discretionary power was as well for their own interests as for that of plaintiff; and that if the jury believed that on the twenty-eighth September a prudent man would have deemed it expedient to sell for the plaintiff or for himself, defendants had a right to sell. To which plaintiff's counsel duly excepted.

Plaintiff's counsel requested the court to charge the following propositions, among others:

The paper dated September 18, 1869, was not authorized by the power of attorney to George A. Wicks.

A sale at the board of brokers was not within the scope of the authority to sell "at public or private sale," given by the writing dated September 18, 1869.

The defendants were bound, under the authority which they held, to exercise that authority in the interest of the plaintiff, and not in their own interest.

If the jury find that the defendants sold the stocks in question in their own interest, and to save themselves, the plaintiff is entitled to a verdict.

The court declined so to charge, and plaintiff's counsel duly excepted.

*Samuel Hand* for the appellant. The power did not authorize Wicks to delegate the discretion with which he was vested to defendants. (*Lewis* v. *Ingersoll*, 3 Abb. Ct. App. Dec. 55; *Berger* v. *Icard*, 4 J. Ch., 368; 2 Kent, 633; Story on Ag., § 13; *Comml. Bk.* v. *Norton*, 1 Hill, 501; *Ingram* v. *Ingram*, 2 Atk., 88; *Henderson* v. *Barnwell*, 1 Y. & J., 387; *Alexander* v. *Alexander*, 2 Ves., 640; *Tonkin* v. *Fuller*, 3 Doug., 300; *Sally* v. *Rathbone*, 2 M. & S., 298;

*Cochran* v. *Irlain*, id., 301, note; *Atty.-Gen.* v. *Berryman*, 2 Ves., 643; Broome's Maxims, 294–385; Bacon's Abr., Authority; *Perry* v. *Hall*, 2 De G., F. & J., 38; *Esdaile* v. *Lanawse*, 1 Y. & C., 394; *Atwood* v. *Manning*, 7 B. & C., 278; Dunlap's Paley on Ag., 192; *Nixon* v. *Hyserott*, 5 J. R., 58; *Rossiter* v. *Rossiter*, 8 Wend., 494; *Mills* v. *Carnly*, 1 Bosw., 159, 164; Pars. Mer. Law, 142.) The court erred in charging that if the market rendered it prudent they had a right to sell either for the protection of their principal or of themselves. (*Bain* v. *Brown*, 56 N. Y., 289; *Dutton* v. *Willmer*, 52 id., 312; *Conkey* v. *Bond*, 36 id., 427; *Parkist* v. *Alexander*, 1 J. Ch., 394; *Reed* v. *Warner*, 5 Paige, 650; *Claflin* v. *Farmers' Bk.*, 25 N. Y., 293; 21 Wend., 614.)

*S. P. Nash* for the respondents. When plaintiff, after learning of the sale of the stocks, claimed them as her property she adopted all the instrumentalities by which they had been purchased. (*Meehan* v. *Forrester*, 52 N. Y., 277; *Henry* v. *Root*, 33 id., 526, 552, 553; *Elwell* v. *Chamberlain*, 31 id., 611, 619.) The power plaintiff gave to her husband must be construed in reference to the usages of the business to which it related. (*Horton* v. *Morgan*, 19 N. Y., 170.) The power of attorney gave Wicks full power to substitute another person in his place; and the substitute had all the powers, discretionary and otherwise, possessed by Wicks. (*Marfield* v. *Goodhue*, 3 Comst., 62, 73.) The sale at the board of brokers was valid. (*Milliken* v. *Dehon*, 27 N. Y. 364.)

MILLER, J. The decision of this case mainly depends upon the construction to be placed upon the power of attorney executed by the plaintiff to her husband and the extent of the authority which it conferred upon him. This power of attorney was full and explicit, conferring ample authority upon the attorney to perform all acts which were necessary to be done in the transaction of the business intrusted to his

charge. The attorney, thereby, was vested with the right to buy, sell and transfer in his discretion gold, stocks, etc., and to draw, execute and deliver " all orders, checks or other instruments in writing which shall or may in his discretion be necessary," etc., in the transaction of the business, which was the purchase and sale of stocks on speculation. It involved the necessity of employing a broker, for the purpose of buying and selling, the pledge of securities purchased, and a right of the broker to protect himself against losses or risks, according to the usual manner and custom in similar cases. (*Horton* v. *Morgan*, 19 N. Y., 170.) The right to this protection would necessarily depend upon the magnitude, hazzard and character of the speculations within the custom stated.

As brokers, the defendants, pursuant to the directions of the plaintiff's agent, made large and extensive purchases in their own name, upon which they advanced the entire cost, amounting to hundreds of thousands of dollars beyond the amount (some $60,000) which the plaintiff's agent had deposited with them, and held on to the securities as a margin. All of these acts they were perfectly justified in doing, and they were clearly within the scope of their recognized power and authority.

The paper executed by the agent of the plaintiff upon the eighteenth of September authorized the defendants to sell, at their discretion, at public or private sale, without any notice whatever, the stocks or gold which they might be carrying for the plaintiff, whenever the margin should fall below five per cent. This paper was also within the meaning of the agent's authority, by virtue of the power of attorney. The exercise of the power to sell without notice was not conferred upon the defendants absolutely, but depended upon the fall of the stocks below five per cent, first, and the exercise of their discretion after they had so fallen. The discretion was to refrain from selling in case they did fall as provided. The right conferred was direct and positive, and could be carried into operation as soon as the time fixed had arrived,

and the stocks had fallen in the market below five per cent. The defendants, as creditors, with a lien upon securities, had originally, without the writing, an undoubted right to sell after demand and notice, and as brokers were only bound to sell when instructions were given to that effect. This did not require the exercise of their judgment in making a sale, while the instrument in question imposed upon them a greater responsibility and the plaintiff thereby derived the benefit of that which, under ordinary circumstances she had no legal right to demand. This was not adverse to the plaintiff's interest, in violation of her rights, or in contravention of the power of attorney executed to her husband.

The authorities cited by the learned counsel for the plaintiff, to uphold the doctrine that the plaintiff's attorney, under the power executed by her, could not delegate the exercise of discretion without express authority to do so, have no application to a case of the character of the one now considered. As we have seen, the power of attorney gave ample authority to execute all instruments which might be deemed necessary in the performance of the duty which it imposed. To say that this was limited to instruments of such a nature as orders and checks, is to give it a restricted interpretation, not warranted by the instrument itself or by the authorities.

*Perry* v. *Nott* (2 De Gex, F. & J., 38); *Esdaile* v. *Nauze*, (1 Y. & C., 394), which are cited, do not decide the question now raised. In both of them no such words were incorporated in the power of attorney, and these cases were disposed of upon a different ground. Nor does *Atwood* v. *Manning* (7 B. & C., 278), aid the plaintiff. The case at bar has no analogy to one where it is entirely apparent that the attorney has gone beyond the letter and intention of his instructions. (See *Nixon* v. *Hyserott*, 5 J. R., 58; *Rossiter* v. *Rossiter*, 8 Wend., 494; *Mills* v. *Carnly*, 1 Bosw., 159.) The power exercised in each of the cases cited was not required to enable the attorney to carry out the purposes intended, nor within the meaning of the instrument conferring the appointment.

The power of attorney here conferred upon the attorney

full authority to substitute another in his place, and the substitute appointed was vested with the same authority as the attorney himself.  Nor can it be doubted that the attorney had ample power to direct the sale of the stocks when he deemed it proper, and if he had at any time so directed, and the sale had been made, that it would have been valid. This was what was actually authorized by the instrument of September eighteenth, with a qualification, however, that no sale was to be made of the stocks, if, in accordance with the best judgment of the defendants, it was inexpedient to sell.  Both parties were interested in their disposal; the plaintiff to insure a profit and the defendants to protect themselves from losses, were authorized, when it was prudent for the benefit of either the plaintiff or themselves, to dispose of the stocks.

It is said that the power to buy and sell gave no power to pledge on a margin; and, if the authority was valid to sell without notice, it did not enable the defendants to acquire a debt or a claim against the plaintiff.  The result of a loss beyond the moneys deposited upon any lawful sale or sales, necessarily, would be to make the plaintiff liable for the deficiency; and there is no sufficient reason why she should not pay the same.  As the counter-claim arose out of the same transaction, it was a proper subject for recovery in this action by the defendants.

There was no error in the charge of the judge if the views already expressed are correct; nor in refusing to charge as requested in the fifth, sixth and seventh propositions of the plaintiff's counsel, which it is now claimed should have been charged.  The charge of the judge to the effect that the instrument of September eighteenth conferred the same authority which the attorney possessed on the defendants, and gave them authority to deal, in their discretion, the same as he might do, was in pursuance of the authority actually given, and in accordance with sound principles, as is already manifest.

Although the judge had stated, in admitting the paper referred to as evidence, that there was ample authority in the

power of attorney to delegate whatever discretionary power
the attorney possessed to the defendants, it must be borne in
mind that the instrument in question did not, as seems to be
supposed, expressly delegate any discretion of the attorney
to the defendants. It authorized them to sell " at their dis-
cretion," without delegating the discretion of the attorney.
If these words had been omitted the power to sell would
have still been in the discretion of the defendants, precisely
as much as they were with the language employed. They
could not have lawfully sold without exercising their discre-
tion ; and as they were bound to do this in the discharge of the
duty assumed under the instrument any way, the language cited
is not important. With or without it the fair and intelligible
import of the authority which was conferred, when taken in
connection with the circumstances of the case, was, that in
the exercise of a sound judgment they had a right to pro-
tect themselves against losses by a sale, after the stocks had
fallen on their hands, and that they were not bound to incur
further risks. This they had a right to do upon demand
or notice ; and the instrument in question waived the right
to such demand or notice.

The charge of the judge, that the defendants had a right
to sell when the market rendered it prudent, either for the
benefit or protection of their principal, or for their own pro-
tection, and that if the market was such that a prudent and
careful man would have deemed it expedient to sell, the
sale was justifiable, was as favorable to the defendants as the
facts in the case demanded.

For the reasons already given, the requests to charge
were properly refused. They were covered by the charge
which had been previously made. The judge had fairly sub-
mitted to the jury whether a sale was justifiable, and
whether it was proper in the exercise of a sound discretion.
This included good faith, and which covers all which was
required of the defendants. (*Marfield* v. *Goodhue*, 3 Comst.,
62–73.) The principle that one who undertakes to act for
another in any matter cannot in the same matter act for

himself, has no application to a case like the present. If it had, it would preclude the defendants from taking any action whatever in reference to a sale, as, from their peculiar relations as brokers, purchasing and holding stock, paid for mainly out of their own funds, they must, necessarily, in making sales, act for the protection of their own interest. The authorities cited on this point have no application to any such case. It is also worthy of observation, in this connection, that although there was evidence to show that the fall in the price of some of the securities was occasioned by a panic, and not from any want of actual value, yet there was reason to apprehend still further depreciation; and if apprehensive of the effect of such a state of affairs, it was for the jury to say whether the sale was made in the exercise of that sound judgment and discretion with which the defendants were invested. It may also be remarked that the evidence tends to show that the next day after the sale the stocks were still lower, and an offer was made to replace them at a cost less than they sold for, which was refused.

The objection that a sale at the board of brokers was not within the defendants' authority was not well taken. The sale was made in accordance with the custom in such cases, and was clearly justified. (*Milliken* v. *Delson*, 27 N. Y., 364.)

The objection to the question put to the witness Chittenden is generally to the form of the question. It is not fairly to be assumed that the answer could have affected the result, and furnishes no sufficient ground for a new trial.

No exceptions were taken which authorize a reversal of the judgment, and a new trial must be denied, and the judgment affirmed.

All concur.

Judgment affirmed.