BARBER v. ELLINGWOOD et al.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. TRIAL (§ 176*)—DENIAL OF REQUEST FOR DIRECTED VERDICT—EFFECT OF WAIVER OF PART OF CAUSE OF ACTION.

     Where, in a suit to recover profits and interest from a broker, plaintiff requested a directed verdict, and realizing that his right to recover the profits depended on conflicting testimony offered to waive the profits, such waiver did not preclude him from subsequently demanding a recovery thereof on his request for a directed verdict being denied.

     [Ed. Note.—For other cases, see Trial, Cent. Dig. § 399; Dec. Dig. § 176.*]

2. BROKERS (§ 38*)—UNLAWFUL ACTS—MEASURE OF DAMAGES.

     Where a stockbroker's customer is entitled to recover at all, for the broker's unlawful closing of his account, he may recover both profits and interest as well as the margin deposited.

     [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 36; Dec. Dig. § 38.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PLEADING (§ 339*)—PLEADING—WAIVER.
  Defendants not being obliged to plead a counterclaim, on pain of waiving it, they are at liberty to abandon it after having pleaded it without waiving the right to subsequently sue thereon.
  [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1045; Dec. Dig. § 339.*]

4. JUDGMENT (§ 956*)—RES JUDICATA—COUNTERCLAIM—PRESUMPTION.
  Where a counterclaim was pleaded, but the judgment for plaintiff did not show that it was litigated, there was no presumption that it was, and hence the judgment was not conclusive against the claim so pleaded in a subsequent proceeding to enforce it, in the absence of evidence dehors the record to show that the counterclaim was litigated or what questions were submitted to the jury and determined by their verdict.
  [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1822; Dec. Dig. § 956.*]

5. JUDGMENT (§ 956*)—RES JUDICATA—BURDEN OF PROOF.
  While the question as to what issues were decided is to be determined by the record on the plea of res judicata, yet, if the judgment roll does not show what questions were litigated, the burden is on the party interposing the judgment as a bar to show such facts either by the record of the proceedings or by other parol evidence.
  [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1822; Dec. Dig. § 956.*]

6. PLEADING (§ 144*)—MODE OF PLEADING SET-OFF.
  The only manner in which a set-off may be pleaded is in a counterclaim.
  [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 293; Dec. Dig. § 144.*]

7. PAYMENT (§ 60*)—PLEADING—EFFECT OF COUNTERCLAIM.
  Where, in an action against certain stockbrokers to recover the balance of an account, defendants pleaded an agreement that they should be at liberty to apply any balance to plaintiff's credit in one account on any indebtedness owing by him in any other, such allegation, after amendment by striking so much of the demand as claimed judgment for a counterclaim, being unavailable as a set-off, was nevertheless sustainable as a plea of payment to the extent of a credit transferred by defendants from one account to balance an indebtedness of plaintiff on another.
  [Ed. Note.—For other cases, see Payment, Cent. Dig. § 144; Dec. Dig. § 60.*]

8. PLEADING (§ 409*)—COUNTERCLAIM—WAIVER OF DEFECTS.
  Plaintiff by filing a reply and a supplemental reply to an alleged counterclaim concedes that the pleading is a good counterclaim in form.
  [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1378; Dec. Dig. § 409.*]

9. JUDGMENT (§ 958*)—RES JUDICATA—QUESTION FOR COURT OR JURY.
  Whether a prior judgment is res judicata of a subsequent claim is one of law for the court.
  [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1827; Dec. Dig. § 958.*]

10. ACTION (§ 27*)—NATURE—CONTRACT OR TORT.
  In an action against brokers, plaintiff alleged a special contract, by which he was to be permitted to speculate in stocks on a $9,000 margin, and that defendants sold certain stocks and bonds and bought in and covered other stocks without notice or authority from plaintiff; that on learning of such unauthorized transactions plaintiff disaffirmed them and notified defendants that he did not acquiesce therein; that on account of such purchases and sales plaintiff had sustained a loss of $10,880.25; and that there remained due after deducting defendants' commission, etc.,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

$10,467.65, with interest from May 5, 1906, which defendants had refused to pay on demand, and for which plaintiff demanded judgment, with costs. *Held*, that the complaint stated a cause of action on contract and not in tort for conversion.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 191; Dec. Dig. § 27.*]

11. ACTION (§ 28*)—CONTRACT OR TORT—WAIVER OF TORT.

Where a broker sells securities which he is carrying for a customer on a speculative account, the customer, at his election, may either sue in conversion or waive the tort and sue for damages for breach of contract.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 196–215; Dec. Dig. § 28.*]

12. BROKERS (§ 38*)—SECURITIES—CONVERSION—DAMAGES.

If a broker's customer has paid for securities purchased through the broker and owes the broker nothing for commissions or for carrying them, he may recover from the broker, in case of the latter's unauthorized sale of the securities, their full value, to be ascertained by the highest price the securities attained during a reasonable time after knowledge of the sale, regardless of the price obtained for them by the broker; unless such amount has been paid over to the customer, in which event the recovery is limited to the balance for which the broker had not accounted.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 36; Dec. Dig. § 38.*]

13. SET-OFF AND COUNTERCLAIM (§ 29*)—ACTION AGAINST BROKER—UNAUTHORIZED SALE OF SECURITIES.

In case of a broker's unauthorized sale of securities held on margin, whether the action is brought for conversion or on contract, the broker is entitled to interpose a counterclaim for advances, interest, and commissions as an offset against any difference between the price at which the securities were sold and the highest price they attained within a reasonable time after the customer had notice of the sale.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*]

14. PLEDGES (§ 36*)—CONVERSION BY PLEDGEE—RECOUPMENT.

A pledgee, at common law, when sued in conversion or on contract for the property, could recoup the amount of his lien, notwithstanding the fact that his act in withholding or disposing of the property was wrongful; the amount recoverable being the difference between the value of the property and the amount of the lien.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 92–94; Dec. Dig. § 36.*]

15. SET-OFF AND COUNTERCLAIM (§ 29*)—LIEN BY PLEDGEE.

In a suit against a pledgee, either in conversion or on contract, for the property, the pledgee is authorized to counterclaim his lien thereon under Code Civ. Proc. §§ 500, 501, either on the theory that the subject of the action was the property on which the pledgee had a lien, or that both the cause of action and the counterclaim arose out of the same transaction.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*]

16. BROKERS (§ 24*)—CONTRACT—CONSTRUCTION—RIGHTS.

A contract between customer and broker, by which the broker was not to call on the customer for further margins while carrying his securities, did not deprive him of the right ultimately, on the account being closed, to collect from the customer any balance of the account in his favor.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19; Dec. Dig. § 24.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Clarence L. Barber against Charles H. Ellingwood and another. From so much of the judgment as awarded plaintiff only $1,100 damages, instead of $1,144.85 and interest from November 14, 1906, plaintiff appeals, with notice that he intends to bring up for review an order denying a motion to correct the verdict of $1,100, by adding interest, and defendants appeal from a judgment for plaintiff in any amount, and from an order denying their motion for a new trial. Reversed on both appeals.

See, also, 130 App. Div. 558, 115 N. Y. Supp. 46; 131 App. Div. 900, 115 N. Y. Supp. 1111; 118 N. Y. Supp. 1138; 120 N. Y. Supp. 947.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

James A. Deering, for plaintiff.
Duncan Edwards, for defendants.

LAUGHLIN, J. These appeals were brought on and argued separately; but, on the suggestion of counsel, we deemed it proper to withhold decision in the one argued first and to decide them together. The defendants were brokers, and the plaintiff was one of their customers. Prior to the 20th day of September, 1906, the plaintiff's business relations with the defendants were represented by two accounts on their books, known as "Nos. 1 and 2," and on that day he opened a third account known as "No. 3." Account No. 2 was closed to the mutual satisfaction of the parties, and it is not involved in the appeal. On or about the 14th day of November, 1906, the defendants refused to purchase or sell any more stocks for the plaintiff. The respective accounts correctly represented the transactions which were actually had by the defendants with respect to each. This and another litigation involve questions concerning the authority of the defendants to make some of the transactions. After the last purchase and sale of securities by defendants, there stood to plaintiff's credit in account No. 3, on said 14th day of November, $1,144.85, and account No. 1 showed him to be indebted to the defendants in the sum of $1,345.22. The defendants closed account No. 3 by applying the balance therein to plaintiff's credit on his indebtedness to them shown in account No. 1, which, if all of the transactions shown by the accounts were authorized, would leave plaintiff indebted to them in the sum of $200.37. This action is brought to recover the amount standing to the plaintiff's credit on account No. 3, on said 14th day of November, before it was closed, by applying such balance to the plaintiff's credit on account No. 1. The plaintiff has recovered the amount of the margin, $1,100, originally deposited on this account, but not the $44.85 which represented profits, nor has he recovered interest. His appeal presents the question as to whether he was entitled to recover the profits and the interest. On the trial he offered to waive the profits, realizing that his right to recover the same depended on conflicting testimony, for he requested a direction of a verdict for $1,100 and interest; but since his request was not granted he is still at lib-

erty to demand profits. The order which he seeks to review was made at Special Term on an application to amend the verdict so as to include interest from the time the account was closed.

We are of opinion that, if the plaintiff was entitled to recover at all—and if this appeal be considered separately it would have to be assumed that he was—he was entitled to recover both profits and interest, as well as the margin deposited. We cannot, however, on the appeal from the judgment, correct the verdict by increasing it, nor could the court at Special Term so correct it. The questions presented by the defendants' appeal, however, render it exceedingly doubtful whether plaintiff was entitled to recover anything in this action. The defendants closed five transactions represented by account No. 1 by selling stock and bonds which they were carrying for the plaintiff, and by buying stock to replace stock which they had sold short for him. The plaintiff claimed that the action of the brokers in thus closing these five transactions represented by account No. 1 was unauthorized, and he brought a separate action, known as "action No. 1," with respect thereto. When action No. 1 was brought, the cause of action presented by the complaint herein had accrued, and the failure to embrace both causes of action in one complaint, or to try action No. 1 so that the record would clearly show what issues were determined by the jury, and to show on the trial of this action what questions were litigated in action No. 1, has given rise to considerable confusion and difficulty in attempting to administer justice between the parties. In action No. 1 the defendants interposed a counterclaim for the balance which they claimed to be due to them on both of these accounts, after giving the plaintiff credit for the amount standing to his credit on account No. 3, to recover for which this action is brought. Their accounts were made and prepared on the theory that all of their purchases and sales were duly authorized. The plaintiff, on the other hand, proceeded in action No. 1 upon the theory that the five transactions, three sales and two purchases of stock and bonds shown in account No. 1 and on which said balance was struck, were unauthorized, and that defendants made a special contract with him, by which they were not to be entitled to demand or receive more margins. Action No. 1 was tried first, and plaintiff recovered a verdict for $4,025.83. The defendants interposed a supplemental answer herein, pleading the judgment in action No. 1 in bar, and alleged that in their counterclaim in that action the plaintiff was given credit for the balance to his credit in account No. 3; that it was alleged as a basis for the counterclaim that both by custom and agreement the brokers were to have the right to hold any securities as security for any indebtedness owing to them; that the counterclaim was litigated and allowed by the jury; and that thereby the plaintiff received credit for the balance in account No. 3 for which he seeks to recover here.

The defendants introduced in evidence the judgment roll in action No. 1, but they did not follow it up by evidence dehors the record to show, as pleaded by them, that the counterclaim was litigated, or what questions were submitted to the jury and presumably must conclu-

sively be deemed determined by their verdict. The judgment in favor of the plaintiff in that action does not show that the counterclaim was litigated, because such judgment might have been recovered regardless of whether or not the counterclaim was litigated. Nor was there any presumption that the counterclaim was litigated, arising on the mere fact that it was pleaded. The defendants were not obliged to plead it, and by failing to do so they would not have waived it. They could have omitted to plead it and have maintained a separate action on it, and after pleading it they were at liberty to abandon it without waiving it. Honsinger v. Union Carriage Co., 175 N. Y. 229, 67 N. E. 436. Where a cause of action, matter in defense, or counterclaim is once litigated on the merits in a court of competent jurisdiction, whether decided properly or otherwise, the judgment is a bar, and whether the judgment be res adjudicata is to be decided on the "record," which, in the limited sense in which that term is here used, means the judgment roll only showing the pleadings and judgment, provided the judgment be such, in the light of the pleadings, that it necessarily shows whether or not the cause of action, defense, or counterclaim over which the question arises was litigated; but, if not, then it is incumbent on the party interposing the judgment as a bar to show the essential facts by the record of the proceedings on the trial or other parol evidence. 23 Cyc. 1132, 1136, 1215; Herman on Estoppel & Res Adjudicata, §§ 267–280; Smith v. Smith, 79 N. Y. 634; Carleton v. Lombard, Ayres & Co., 149 N. Y. 137–152, 43 N. E. 422; Patrick v. Shaffer, 94 N. Y. 423; Adams v. Conover, 87 N. Y. 422, 41 Am. Rep. 381; McGuinty v. Herrick, 5 Wend. 240; Baker v. Stinchfield, 57 Me. 363.

There were two appeals to this court in action No. 1. On the first appeal the opinion was expressed by the present presiding justice that the action was on contract, but the question was not decided by the court. 130 App. Div. 555, 115 N. Y. Supp. 43. On the second appeal the judgment in favor of the plaintiff was reversed on the ground that the verdict of the jury, sustaining the special contract of an extraordinary nature as claimed by the plaintiff, by which the defendants were to carry his transactions without exacting further margins, was against the weight of the evidence (Barber v. Ellingwood, 135 App. Div. 549, 120 N. Y. Supp. 947), and attention was drawn by the minority opinion, which also favored reversal, to the fact that, in so far as the action related to "short" transactions, it was necessarily on contract, for there would be no property of the customer to convert; and the view was therein expressed that it probably should be regarded as an action to recover the plaintiff's damages, or, in other words, the amount owing to him by the brokers on a full adjustment of their transactions with respect to the account. If in action No. 1 the defendants recovered on the counterclaim in which, in arriving at the balance claimed by them, they credited the plaintiff with the balance to his credit in account No. 3, it is manifest that, having had the benefit of that credit, plaintiff cannot maintain an action to recover on account thereof, for the former judgment would be a bar. The fact that the plaintiff recovered a verdict in action No. 1 does not necessarily show that the counterclaim was not allowed. The case may have been so submitted to the jury that it was the duty

of the jury to deduct the amount of the counterclaim from the amount that would otherwise be due to the plaintiff. It is evident, therefore, that the question as to whether or not the counterclaim was litigated in action No. 1 so that the judgment therein is a bar to this action can only be determined by evidence dehors the record showing what questions were submitted to the jury. On this point, under their plea of the judgment in action No. 1 as a bar, the burden was on the defendants. During the discussion at the close of the evidence, counsel for defendants stated to the court that on further consideration it appeared to defendants that the judgment in action No. 1 was not res adjudicata, and at the close of the charge he requested the court to instruct the jury, in effect, that the right of the plaintiff to recover the balance of account No. 3, and of the defendants to credit that amount in account No. 1, was not "litigated or determined in action No. 1 and is not res adjudicata in this action."

The defendants originally undertook to plead the same counterclaim in this action that they pleaded in action No. 1, and they demanded an affirmative judgment against the plaintiff for the same amount. The facts are not expressly alleged as a counterclaim, but merely as a separate defense. At the commencement of the trial, the answer was amended on motion of counsel for defendants "by striking out so much of the demand as demands judgment for a counterclaim." The theory of counsel for defendants appears to be that, notwithstanding the amendment to which reference has been made, the answer remained good as a plea of set-off of the balance owing by the plaintiff in account No. 1 before it was so reduced. We have recently held that the only manner in which a set-off may be pleaded now is in a counterclaim. Rando v. National Park Bank (App. Div. Feb. 1910) 121 N. Y. Supp. 1048. With the demand for affirmative relief stricken from the separate defense, there is nothing left to indicate that it was ever intended as a counterclaim; but it might have been sustained as a good plea of payment, for it is alleged, in effect, that the agreement between the parties was that the defendants should be at liberty to apply any balance to the plaintiff's credit in one account on any indebtedness owing by him in any other. That, however, is not the theory on which the case was tried, and there was conflicting evidence on the question as to whether such was the agreement between the parties, and that question of fact was not determined on the trial, nor was any request that it be determined made. The plaintiff evidently considered that the answer contained a counterclaim, for he served a reply and a supplemental reply. Had it not been, therefore, for the amendment of the answer striking out the demand for affirmative judgment, the plaintiff would be conclusively deemed to have acquiesced in the pleading as a good counterclaim in form.

It is evident that counsel for the defendants acted upon the theory that the pleading was sufficient to authorize an offset of a balance owing to the defendants in account No. 1 sufficient to extinguish the plaintiff's claim. Inasmuch, therefore, as plaintiff did not question the sufficiency of the counterclaim as an offset, the defendants should have the benefit of it as such a pleading. After the recovery in ac-

tion No. 1, plaintiff served a supplemental reply pleading that judgment as a bar to the defendants' counterclaim. This was before the defendants amended their counterclaim by striking out their demand for affirmative judgment, and, if the facts pleaded in the answer as a separate defense are to be regarded as a counterclaim to the extent of authorizing an offset, the burden was on the plaintiff to show that account No. 1 was litigated in action No. 1, and that the judgment therein was a bar to the right of the defendants to offset the balance shown on account No. 1 to be owing by the plaintiff before he was credited thereon with the balance shown on account No. 3. This he did not do, and therefore presumptively defendants were entitled to the offset, for it appears by the complaint in action No. 1 that plaintiff made the credits and charges in account No. 1 the basis from which he figured his damages, for he only sought to recover the damages over and above the credits and charges in said account. The plaintiff at the close of the evidence moved for the direction of a verdict, and the defendants moved for a dismissal of the complaint. Both motions were denied. The court then submitted the case to the jury, and in so doing drew attention to the questions involved in action No. 1, and instructed the jury that, if it appeared to them that the jury in action No. 1 took into account all of the relations of the parties "balancing their affairs," there could be no recovery, but otherwise the plaintiff would be entitled to recover "$1,100 and some odd dollars." There was, as has been seen, no basis on which this could be determined, and, if there had been, the question of res adjudicata was one of law for the court to decide.

Counsel for the defendants made various requests to the court to instruct the jury, based on the theory that they were entitled to offset the indebtedness owing by the plaintiff to them in account No. 1, before it was reduced as already stated, against his claim in this action, all of which were refused and exceptions were duly taken. Sufficient facts not having been presented to show that the counterclaim as an offset was barred by the former judgment, these rulings were erroneous.

A new trial is pending in action No. 1, and, inasmuch as there must be a new trial in this action, it is proper that we should now express an opinion for the aid and guidance of the trial court with respect to whether action No. 1, the pleadings in which are in this record, is to be regarded as an action on contract or in tort and with respect to the bearing of the judgment in that action on the issues herein.

The allegations of the complaint in action No. 1 material to a decision of this question are: That a special contract was made between the plaintiff and the defendants for speculating in stocks and other securities on margin; that plaintiff deposited with the defendants as margin on said account the sum of $9,000; that defendants were carrying certain stocks and bonds in said account "long" and certain stocks "short"; that defendants "sold" certain stocks and bonds and "bought in and covered" certain stocks "without notice to and without authority from plaintiff"; that, "on learning of said unauthorized sales and purchases, plaintiff disaffirmed the same and notified defendants that he did not acquiesce therein"; that, "on account of said unauthorized pur-

chases and sales, the plaintiff sustained a loss of $10,880.25 (it appeared on the appeal in action No. 1 that these figures were reduced by an amendment on the trial); that defendants' commissions for buying and selling the stock and bonds would have been $137.50," and they would have been entitled to charge plaintiff about $275 in interest, making in all $412.50 (it also appeared on the appeal in action No. 1 that these figures were increased by an amendment on the trial); that, deducting said credit from said loss, "there remains due to the plaintiff from the defendants" the sum of $10,467.75, "with interest thereon from May 5, 1906, which defendants have refused to pay on demand made, and for which he demands judgment with costs."

It will be seen that these allegations entirely omit the phraseology customarily employed in an action for conversion and contain no apt words to show that it was intended as an action for conversion, but appear to have been drafted to charge merely a breach of the special contract pleaded and resulting damages, and, although the facts show a conversion, conversion is not charged.

If it were intended to charge conversion, there was no necessity for alleging a demand for the amount due. It is not charged that the acts of the defendants were either wrongful or unlawful. Since an order of arrest may be obtained in an action for conversion, and a body execution will issue on the judgment, a complaint to be construed as in conversion should, by appropriate language, charge that the acts were wrongful or unlawful as distinguished from a mere violation of contract rights, which is all that is charged here. The rule in such cases is that if the allegations be ambiguous on this point, or it be doubtful whether the action is brought in tort or on contract, every intendment is in favor of construing the complaint as setting forth a cause of action on contract, on the theory that the tort has been waived. Goodwin et al v. Griffis, 88 N. Y. 631; People v. Wood, 121 N. Y. 522, 24 N. E. 952; Neftel v. Lightstone, 77 N. Y. 96; Catlin v. Adirondack County, 81 N. Y. 639, reported in full in 11 Abbott's N. C. 377.

I think it is not very material, however, whether action No. 1 be deemed in tort or on contract, for in either view the counterclaim was property interposed. Where a broker sells securities which he is carrying for a customer on a speculative account, the customer may either sue in conversion, or waive the tort and sue for damages for a breach of contract (Stearns v. Marsh, 4 Denio, 227, 47 Am. Dec. 248; Baker v. Drake, 53 N. Y. 211–213, 13 Am. Rep. 507), and in either form of action the rule of damages is the same, and the customer is entitled to the benefit of the highest price of the stock within a reasonable time after he receives notice or acquires knowledge of the sale (Baker v. Drake, supra; Wright v. Bank of Metropolis, 110 N. Y. 237–246, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356; Minor v. Beveridge, 141 N. Y. 399–403, 36 N. E. 404, 38 Am. St. Rep. 804; Burhorn v. Lockwood, 71 App. Div. 301–303, 75 N. Y. Supp. 828, and cases cited). The broker could not question the right of the customer to the benefit of the price at which the securities are sold, whether with or without authority, and consequently it is assumed that the customer

is entitled to the benefit of that price, at least; but, owing to the object of such a contract and to the fluctuating value of the securities, the courts have deemed such price inadequate and, to fully compensate the customer, have made an exception to the general rule that the recovery is limited to the actual market value of the property at the time of the conversion, by holding that the customer is entitled to the benefit of the price at which he could have repurchased the stock within a reasonable time thereafter, and have usually stated that the measure of the customer's damages for the wrongful conversion or breach of duty is the difference between the price at which the securities were sold and the market price within a reasonable time thereafter. Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507; Colt v. Owens et al., 90 N. Y. 368.

This statement of the rule manifestly is made on the assumption that the broker has fully accounted to the customer for the price received, or has credited him therewith, and that the customer has acquiesced therein and sues only for his loss or damages over and above the amount which he has received or with which he has been credited, for it is evident that such difference in price would not in all cases be the full measure of the recovery. If the customer had paid for the securities and owed the broker nothing for commissions or for carrying them, then clearly he would be entitled to recover their full value to be ascertained by such highest price, and the amount which the broker sold them for would be of no importance, unless it has been paid over to the customer, in which case a recovery could only be had for the balance for which the broker had not accounted. See Wright v. Bank of Metropolis, 110 N. Y. 237–246, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356. So, too, if the broker was carrying the securities on margins, the price received on the unauthorized sale might not be sufficient to reimburse him for advances, interest, and commissions, in which case, whether the action be brought for conversion or on contract, he would be entitled to interpose a counterclaim for the balance which would be offset against any difference between the price at which the securities were sold and said highest price, for the rule at common law was that a pledgee who was sued in conversion or on contract for property could recoup the amount of his lien, notwithstanding the fact that his act in withholding or disposing of the property was wrongful, and that the amount recoverable was the difference between the value of the property converted and the amount of such lien (Sedgwick on Damages, vol. 2 [7th Ed.] p. 391, and cases cited; Briggs v. Boston & Lowell R. R. Co., 6 Allen, 246, 83 Am. Dec. 626. See, also, Davis v. Bliss, 187 N. Y. 77–84, 79 N. E. 851, 10 L. R. A. [N. S.] 458; Parish v. Wheeler, 22 N. Y. 494–511), and under the Code of Procedure and Code of Civil Procedure, either on the theory that the subject of the action was the property upon which the pledgee had a lien, or that both the cause of action and the counterclaim arose out of the same transaction, the amount of the lien could be counterclaimed. Code Proc. §§ 149–150; Code Civ. Proc. §§ 500, 501; Dos Passos on Stockbrokers & Stock Exchanges (2d Ed.) pp. 230–233; Stewart v. Drake, 46 N. Y. 449; Minor v. Beveridge, supra; Wicks v. Hatch et al., 62 N. Y. 535; Toplitz v. Bauer, 161 N. Y. 325–336, 55 N. E. 1059. Of course, in conversion an order of arrest might be

.allowed, and a body execution would issue; but the only difference with respect to the amount of the recovery would be that in conversion the counterclaim might be limited to a balance owing to the broker on .account of the particular securities in question, while, if the action be ·on contract, any other balance owing to the broker arising on contract ·or any other cause of action against the customer on contract owned by the broker at the commencement of the action could be counter-·claimed. Code Civ. Proc. §§ 501, 502.

The question as to whether, in the absence of a special agreement, a broker, like a banker, has a general lien on all securities of his customer, in his hands, for any balance owing to the customer which is the law in England (In re London & Glove Finance Corporation, S. R. Ch. Div. 416), has not been authoritatively decided here (Dos Passos ·on Stockbrokers & Stock Exchanges [2d Ed.] pp. 804 et seq., 809); but on principle it would seem that such lien should exist in favor of stockbrokers, particularly when that broker advances part or all of the purchase price of the securities. It is not necessary to decide the point, however, for it is alleged in the counterclaim in action No. 1 that both by virtue of the custom and by special agreement the brokers were given the right to hold any of plaintiff's securities as security for .any balance of account at any time owing to them. I have assumed in this discussion that the alleged special agreement, by which it is ·claimed that the brokers were not to call upon plaintiff for further margins while they were carrying the stock, does not, if established, ·deprive them of the right ultimately, on the account being closed, to ·collect from the plaintiff any balance of the account in their favor, for it is not alleged that they were to bear losses, and it would seem therefore that, since they do not in the ordinary case forfeit by a wrongful sale the right to recover the balance of the account as thus made up, they would not for a breach of this special contract; but, since that question has not been argued, we leave it open for further ·consideration, if necessary.

Thus it appears on the plaintiff's appeal that, if he be entitled to re-·cover at all, he was entitled to recover the items of profits and interest, and, on the other hand, the appeal of the defendants shows error to ·their prejudice. The plaintiff asks for a reversal and for a new trial unless we can amend the judgment by increasing the verdict by the items to which reference has been made, which manifestly we cannot do, and the defendants also desire, and apparently are entitled to, a new trial. If the attorneys are desirous of having the rights of their clients determined in accordance with law, there should be no difficulty in so conducting the next trial of action No. 1 that the claims involved in both actions will be adjusted therein, or, at least, that the record of the trial will show whether or not, and to what extent, if any, the issues in this action have been litigated in that action.

We are of opinion, therefore, that a new trial should be granted, with costs of the appeal to the party who shall ultimately succeed in the action. All concur; MILLER, J., in result.