## In re DICKINSON.

(Supreme Court, Special Term, New York County. November, 1915.)

1. BROKERS &#x27F3;30—STOCKS—UNAUTHORIZED SALE—CONTRACT OF BAILMENT—BREACH.

 Where one who had an open account with stockbrokers ordered them to sell certain of his stocks, which they failed to do, but later made an unauthorized sale thereof, they thereupon became liable to the owner for the breach of an implied contract of bailment.

 [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 23; Dec. Dig. &#x27F3;30.]

---

&#x27F3;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BROKERS ⊖⟶38—STOCK—FAILURE TO SELL—MEASURE OF DAMAGES.

　　One having an open account with stockbrokers ordered them to sell certain stocks at 19, which they falsely reported to him to have done on July 17th. Thereafter they made unauthorized sale without the owner's knowledge, and which he did not discover until the 20th of September following. Stock rose continually from July 17th to September 28th, when it reached 47, but during the entire time the owner rested content with his supposed sale at 19, and made no effort to repurchase the stock on the market. *Held*, that the owner's measure of damages was the amount which would have been realized from a sale of the stock at 19, and not at the highest point reached within a reasonable time after the owner's discovery of the failure to sell as ordered.

　　[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. ⊖⟶38.]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⊖⟶307—STOCKBROKERS' UNAUTHORIZED SALE—OPEN ACCOUNT—"MUTUAL DEBTS AND CREDITS."

　　Where, in violation of the owner's order to sell certain stock at 19, a firm of stockbrokers retained the stock and made a later unauthorized sale thereof, having informed the owner that the stock had been sold as ordered, and the transaction was one involved in a general purchase and sale of stock account between the parties, the owner was entitled to set off his claim for damages under the amendment to the Debtor and Creditor Act (Laws 1914, c. 360, § 13), providing for the offset of mutual debts and credits between the estate and a creditor, in an action on open account brought against him by the broker's assignee for creditors.

　　[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 893–899; Dec. Dig. ⊖⟶307.

　　For other definitions, see Words and Phrases, First and Second Series, Mutual Credits; Mutual Debts.]

In the matter of the general assignment for the benefit of creditors against Charles H. Dickinson, a sole surviving partner of the firm of Beers & Owens. Application of Edmund F. Harding for a set-off on mutual account. Set-off denied, on reargument of decision modified.

Dos Passos Bros., of New York City (Cyril F. Dos Passos, of New York City, of counsel), for the motion.

Marsh & Wever, of New York City (Charles Capron Marsh, of New York City, of counsel), opposed.

GIEGERICH, J. When this matter was originally presented the petitioner's claim to an offset on account of the pretended sale of the Allis-Chalmers stock, beyond the $1,900 which the assignee offered to allow him, was rested solely upon the theory that there had been a wrongful conversion of the stock by the brokers. I disposed of the case on that theory, holding not only that the petitioner could not be allowed to offset his damages arising out of such conversion, but that he could not properly be allowed the $1,900 which the assignee offered to allow him because, it seemed to me, the only theory upon which that sum could be allowed to be offset was that the 100 shares of the Allis-Chalmers stock had been sold at that price, whereas the petitioner himself asserted that no such sale had ever been made; and it was an essential part of the petitioner's case to show that no such sale had been made, for, if the sale had in fact been made at

19, it would have been in accordance with the petitioner's orders, and he would have no possible ground to claim more than the assignee offered him.    Upon the reargument the petitioner urges the theory that he is not confined to a claim for damages in conversion, but may waive any claim sounding in tort and predicate his right to an offset upon a breach of contract by the brokers, in which case, he asserts, upon the authority of Barber v. Ellingwood, No. 2, 137 App. Div. 704, 122 N. Y. Supp. 369, and similar cases, his damages would be the same as in an action for conversion.

[1] Counsel for the assignee apparently concedes that the petitioner may properly elect to rest his case upon a breach of contract rather than upon a conversion, but argues that, since he is willing to allow a credit of $1,900, the petitioner cannot show any damage upon that theory, because the only contract broken was the contract to sell at 19.    In taking this last position I think counsel overlooks the fact that the petitioner could not base any claim for damages upon a supposed breach of the contract to sell at 19, because, while the stock was still undisposed of, the petitioner had plainly told the brokers that he had changed his mind and did not wish to sell at 19.    After that the brokers would have had no right to sell at 19, and any duty that they were under to sell at that price was therefore at an end.    It does not appear when the brokers actually sold the petitioner's stock, or to whom or at what price.    Such sale was, however, wholly unauthorized and constituted a conversion.    If the sale could be identified, it would doubtless be within the petitioner's rights to waive the tort involved in the unauthorized disposition of the stock and ratify the sale.    But this has not been done.    I suppose, however, it may properly be said that the brokers were chargeable with a breach of an implied contract of bailment when they disposed of the stock delivered to them by their customer without his authority; but the difficulty is in arriving at the proper measure of damages.

[2] The petitioner, although he had ordered his stock sold at 19 and thought that it had been sold at 19 on July 17, 1915, claims that since it was not until September 20th that he discovered the falsity of his broker's reports, and that there had in fact been an unauthorized disposition of the stock, he is entitled to claim the highest price which the stock reached in the market within a reasonable time after his discovery of the conversion, and this price he fixes at 47, reached on September 28th.    There is no dispute that the stock reached that price on the day named, or that that day was within a reasonable time of the petitioner's discovery of the conversion; but I am of the opinion that the measure of damages suggested does not apply to such a case as the present.    If the petitioner had rested in the belief that his securities were in the hands of the brokers and were being carried for his account, it would have been proper to allow him a reasonable interval after the discovery of their conversion in which to replace them, and to hold the brokers liable in damages for the highest price reached by the stock within the period during which he might have elected to repurchase it.    Wright v. Bank of the Metropolis, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356.    Here, however, the

petitioner was told not later than July 19th that his stock had been sold at 19. The statement was false, and his stock had not in fact been sold at all at that time. He discovered the fact on September 20th, and now seeks to hold the assignee liable for damages to be calculated upon the highest price reached within eight days thereafter. It seems to me that to apply the general rule of damages in such a case would be to overlook the principles upon which the rule rests. In the case at bar the petitioner thought his stock had been sold at 19, in accordance with his orders. He made no effort to replace it. The market price continued to rise, but he rested content with the disposition which he had ordered and which he understood had been made. Of course, if he were able to put his finger upon a subsequent sale of his stock made by the brokers he would unquestionably be entitled to credit for the price actually realized upon such sale. But why, having lain by until September 28th without attempting to repurchase the stock, should he be allowed credit for the market price of that day? Such an allowance could only be made on the theory that the date mentioned was within a reasonable time of his discovery that his stock was gone and that he had the right on that day to repurchase at that price. But here the petitioner had been informed and believed that his stock had been disposed of on July 17th. If he can claim the highest price reached within a reasonable time from September 20th when he discovered the facts, he could equally claim the highest price reached within a reasonable time of such discovery, if the discovery had not been made until a year later. It seems to me that these considerations show that the case is not a proper one for the application of the rule of damages which the petitioner relies on. See Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507. In my opinion the most that the petitioner can properly claim as an offset is the $1,900 which he was advised and believed the stock had been sold for and which the brokers would have been estopped to deny. In my former opinion I expressed the view that any claim of the petitioner arising out of the conversion of the Allis-Chalmers stock must be made against the estate like any other creditor's claim.

The petitioner now urges that, electing to stand upon contract, he may offset his claim against the assignee under the recent amendment of the Debtor and Creditor Law (Laws 1914, c. 360, § 13). Section 13, as amended, provides, so far as material, as follows:

"*Debts Which may be Proved Against the Estate.*—Debts of the assignor may be proved and allowed against his estate which are  *  *  *  (c) or founded upon an open account, or upon a contract, express or implied whether due or not due. In allowing the claims against the estate, in all cases of mutual debts or credits between the estate and the assignor and a creditor the amount shall be stated and one debt shall be set off against the other, and the balance only shall be allowed."

[3] It sufficiently appears from the papers submitted that the petitioner's account with the assignors was a general account in which he dealt in various kinds of securities, and through which, in its earliest stages, this 100 shares of Allis-Chalmers stock had passed. That the petitioner would have the right under the circumstances to offset his claim against the claim of the assignee of the brokers in an

156 N.Y.S.—16

action by the latter against the former is well established. Code of Civ. Proc. §§ 501, 502; Barber v. Ellingwood, No. 2, supra, at pages 713, 715; Stewart v. Drake, 46 N. Y. 449; Wicks v. Hatch, 62 N. Y. 542, 543; Rothschild v. Mack, 115 N. Y. 1, 21 N. E. 726; Harway v. Mayor, 1 Hun, 628; Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 Am. St. Rep. 803.

The present case comes squarely within the provisions of the statute above cited, and I will modify my former decision to the extent of directing the delivery of the Interborough-Metropolitan stock upon payment of the balance due on the account less $1,900 and less the sum of $25 mentioned in the sixth paragraph of the petition, with interest on such balance from September 9, 1915.

Motion disposed of as indicated, without costs.        Settle order on notice.