**John SUSI, Plaintiff,**

**v.**

**BELLE ACTON STABLES, INC.,** Harold Rosenberg, Jack Stahl and Rona Plastics Corporation, now known as Stahl Liquidating Corp., Defendants.

**No. 61 Civ. 778.**

United States District Court
S. D. New York.

Dec. 6, 1966.

Casey, Lane & Mittendorf, New York City, for plaintiff, William E. Kelly, and Alan R. Wentzel, New York City, of counsel.

Julius Gerzof, Freeport, N. Y., for defendants.

MANSFIELD, District Judge.

This diversity suit for conversion of race horses is before the Court upon remand by the Court of Appeals for recomputation of damages in accordance with its opinion, 360 F.2d 704 (2 Cir. 1966). All parties have stipulated that the findings of District Judge Henry N. Graven, before whom the case was tried without a jury, may be accepted for purposes of recomputing damages, except to the extent that Judge Graven's findings have been modified by the decision of the Court of Appeals. This decision deals with certain questions of law that have been raised by the parties with respect to principles to be applied in adducing evidence of the amount of damages.

The horses Belle Acton, Wonderful One, Storm Moraka and a half interest in the horse Esquire Direct were alleged to have been converted by defendants. Judge Graven found that the half interest in Esquire Direct was converted by the defendant Rosenberg as a result of his purchase of this interest from Landers, the former owner on July 6, 1960; that the three other horses were converted by the defendants' acquisition of legal title to them from Landers on August 2, 1960; and that the horses had the following values on the dates of conversion:

| | |
|---|---|
| Belle Acton | $40,000 |
| Wonderful One | 3,500 |
| Storm Moraka | 5,000 |
| Half interest in Esquire Direct | 2,750 |
| | $51,250 |

He entered judgment in the sum of $51,250, without any allowance or set-off for a stableman's lien claimed by one William Haughton under § 183 of the New York Lien Law, McKinney's Consol.Laws, c. 33, and his subrogation rights under an earlier $8,000 mortgage on the horse Belle Acton, known as the Tuccio mortgage, acquired by him from Tuccio and assigned by him on August 2, 1960 to the defendants under a tripartite agreement between himself, Landers and Rosenberg.

On appeal the Court of Appeals held that the defendants' acceptance of legal possession under the August 2, 1960 agreement did not, in and of itself, constitute conversion if, as Haughton claimed, he was entitled to a stableman's lien on each of the horses, since he would be entitled to retain possession of each horse that was the subject of such a lien. The Court indicated, however, that conversion did occur later when the defendants exercised a dominion that was inconsistent with Susi's ownership, such as when the defendants (on February 25, 1961) sold three of the horses to third parties without compliance with the statutory provisions for enforcing the assigned lien, and when the defendants failed to recognize plaintiff's title pursuant to his demand (made on or about February 28, 1961). The Court of Appeals further held that the measure of recovery for conversion of Belle Acton, Storm Moraka and Wonderful One, with proper adjustment for interest, should be the value of these three horses on the date of conversion, less whatever lien Haughton had upon them on August 2, 1960, including his rights under the $8,000 Tuccio mortgage on Belle Acton; and that with respect to the half interest

in the horse Esquire Direct, the damages would be the value of that half interest on the date of conversion, less an allocable share of Haughton's lien attributable to that horse on August 2, 1960.

Upon remand the parties have stipulated that for purposes of recomputing damages there was no substantial difference in the value of the horses from the time when the District Court found them to have been converted (i. e., August 2, 1960 in the case of Belle Acton, Storm Moraka and Wonderful One, and July 6, 1960 in the case of the half interest in Esquire Direct) through February 1961. Since defendants unquestionably exercised dominion over the first three horses by February 1961, it thus is unnecessary to determine the exact date of conversion for purpose of computing damage, although such date may be material for the purpose of fixing the time when interest began to run.

Under the Court of Appeals' opinion plaintiff is entitled to recover from all of the defendants the value of the three horses, Belle Acton, Storm Moraka, and Wonderful One, less whatever lien Haughton had on them on August 2, 1960. With respect to plaintiff's one-half interest in the horse Esquire Direct, if the parties are unable to agree upon a solution, a determination must be made as to whether there was a conversion of plaintiff's half interest in that horse, in which event damages may be awarded against all defendants except Belle Acton Stables, Inc. in the sum of the stipulated value of the half interest in that horse, i. e., $2,750, less an allocable share of Haughton's stableman's lien.

Haughton having acquired Tuccio's outstanding $8,000 mortgage on the horse Belle Acton, the August 2, 1960 agreement between Landers, Haughton and Rosenberg recites that Haughton had outstanding stableman's bills in excess of $21,000 for feeding, training and caring for six horses: Belle Acton, Danny Dares, Esquire Direct, Esquire Gold, Storm Moraka, and Wonderful One; and that on the same date he agreed to assign his liens to the defendant Rosenberg for the sum of $21,000, which was paid.

Plaintiff argues that Haughton's agreement of August 2, 1960, with Landers and Rosenberg, whereby Rosenberg acquired the foregoing liens for the sum of $21,000, constituted a three-cornered executory accord, which had the effect of fixing Haughton's lien at that amount. This argument, while ingenious, lacks a sound basis. Rosenberg, by paying $21,000 for liens claimed by Haughton to total $32,000, was a purchaser of whatever lien claims Haughton had, which could not preclude the purchaser from enforcing the claims at their full face amounts. Although no formal assignment of the liens was ever actually made by Haughton to Rosenberg, the Court of Appeals stated that it did not consider this to be material. Rosenberg, therefore, stood in Haughton's shoes for the purpose of asserting whatever lien Haughton had on each of the four horses here involved.

Except for plaintiff's argument based on the theory of executory accord, which we reject, Haughton's right to assert the $8,000 Tuccio lien against the horse Belle Acton is not disputed. The amount of Haughton's stableman's liens on the four horses, however, is disputed. The defendants argue that Haughton's total lien amounted to $32,000, including the $8,000 Tuccio mortgage which he acquired by assignment. As the District Court found, however, and the Court of Appeals later noted in its opinion, the $32,000 figure represented Haughton's "claim", as distinguished from amounts proven to have been actually expended by him for the feeding, care and training of each of the four horses, after deduction of payments or other credits applied to the charges for each of the four horses. (See District Court Finding No. 7 and Court of Appeals opinion, 360 F.2d 704.) The District Court did not make any finding as to the amount of Haughton's stableman's liens for the reason that it concluded that the liens were not assignable and therefore could not be set

off by Rosenberg or the other defendants.

Now that the Court of Appeals has held that the stableman's liens, to the extent that they existed on each of the four horses as of August 2, 1960, may be set off by the defendants, it becomes important to determine the actual amount of the lien on each horse. This being a diversity suit the burden of proof on this issue must be determined according to New York law. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939). Under New York law Haughton's liens are in the nature of a set-off or recoupment from the value of the property at the time of conversion. Smith v. Savin, 141 N.Y. 315, 329, 36 N.E. 338, 342 (1894); Barber v. Ellingwood, 137 App.Div. 704, 122 N.Y.S. 369 (1st Dept. 1910); 10 Ency. N.Y.Law, Damages § 952 (1965); and the burden of proving such a set-off, recoupment, or reduction of damages is upon the defendants. American Oil Co. v. Coughlin, 261 App.Div. 852, 24 N.Y.S.2d 731 (3d Dept. 1941); 10 Ency. N.Y.Law, Damages § 917 (1965).

Defendants contend that Haughton's stableman's lien is one general, indivisible lien, the entire amount of which is applicable to each and all of the four horses here involved, regardless of the amount expended by Haughton on the care, feeding and training of each of the horses; and that Haughton may assert a lien against the four horses for charges incurred for Landers' other horses in his care and custody (Timely Pick, Sudden Counsel). The New York Lien Law relied upon by defendants, however, is to the contrary. Section 183 of New York Lien Law gives the liveryman a lien "upon *each* animal kept * * * for the sum due him for the care, keeping, boarding or pasturing of *the* animal * * * under the agreement * * *." (Italics added). Thus the lien is a specific one, attaching to the specific animal for the care, feeding and maintenance of that animal, as distinguished from the maintenance of any other animals. It limits the agister's lien on each animal to charges made with respect to that animal. Thus it is in all respects the same as a garageman's lien under § 184 of the New York Lien Law, which has been authoritatively interpreted as creating a specific lien attaching only to each individual motor vehicle for charges rendered on account of that vehicle and not a general lien applicable to other vehicles held for the same owner. New York Yellow Cab Co. Sales Agency v. Laurel Garage, Inc., 219 App.Div. 329, 219 N.Y.S. 671 (1st Dept. 1927); People v. Messineo, 270 App.Div. 817, 59 N.Y.S.2d 776 (2d Dept. 1946).

The conduct of recomputation hearings to date has been hampered by the foregoing differences between the parties as to the interpretation to be given to the earlier findings, the question of which party has the burden of proof with respect to Haughton's stableman's lien, and the question of whether the lien was a general, collective lien, or a specific one. These questions, having hereby been resolved, the case is set down for further hearings with respect to recomputation of damages, to commence on Wednesday, December 14, at 4:00 P.M. in Court Room 110, United States Courthouse, at which time, having in mind the foregoing rulings with respect to the burden of proof, the Court will receive such evidence as will be offered by the parties with respect to the issues to be decided, including conversion of the horse Esquire Direct, and the amount of any stableman's lien which Haughton had upon each of the four horses on August 2, 1960. Pending such hearings, plaintiff's requests for admissions pursuant to Rule 36, F.R.Civ.P. are stayed in view of the objections interposed by the defendants.

So ordered.